IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL P. FARLEY,

        **Petitioner,**

v.                               Case No. 21-CV-00756-SPM

ANTHONY WILLS,

        **Respondent.**

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

    Following a bench trial in Hamilton County, Illinois, Petitioner Michael Farley was convicted on three counts of predatory criminal sexual assault of his stepdaughter, R.Y., a child under the age of 13. (Doc. 39-1, Exh. A). He was sentenced to imprisonment for 60 years and is now in the custody of the Illinois Department of Corrections at the Menard Correctional Center.

    Farley filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Title 28 U.S.C. § 2254(a) grants federal courts jurisdiction to entertain an application for a writ of habeas corpus on behalf of a person who is in custody pursuant to a judgment of a state court on the ground that the person is in custody in violation of the Constitution or laws or treaties of the United States.

    Farley's *pro se* Petition raised 155 grounds for relief, however many of these claims pertain to similar factual issues.[1] Respondent grouped Farley's grounds for

---

[1] Relevant portions of records from the state court proceedings are attached to Doc. 39 as exhibits.

relief into 13 separate issues, and the Court adopts this enumeration for convenience:

1. Claim 1: The trial court erred in denying petitioner's motion for a directed verdict at the close of the State's case.

2. Claim 2: The State failed to prove petitioner guilty beyond a reasonable doubt.

3. Claims 3-4: Petitioner was not afforded probable cause determination via indictment or at a preliminary hearing and Petitioner was not admonished of and did not knowingly and voluntarily waive his right to a preliminary hearing.

4. Claim 5: Petitioner was not admonished of and did not knowingly waive his right to a jury trial.

5. Claim 6: The trial court erred in allowing the State to introduce R.Y.'s out-of-court statements under 725 ILCS 5/115-10.

6. Claim 7: The trial court erred in allowing R.Y. to testify via closed circuit television.

7. Claims 8-9, 13a: Petitioner was denied a fair trial by Dawn's testimony and his uncharged rape and verbal abuse, and petitioner was denied a fair trial when witnesses testified about R.Y.'s truthfulness.

8. Claims 10, 13b: Petitioner's trial counsel was ineffective for failing to object to Dawn's testimony about his uncharged rape and verbal abuse of her and the testimony of witnesses speaking to R.Y.'s truthfulness.

9. Claims 11, 32-35, 57: Petitioner's trial counsel was ineffective for failing to investigate and impeach R.Y. with evidence that she made prior false accusation of sexual abuse against other men.

10. Claims 12, 14-16: Trial counsel was ineffective because counsel did not understand law pertaining to uncorroborated confessions or file a motion to suppress Petitioner's statements to police. Appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel claims on direct appeal, and cumulatively these errors and others denied Petitioner a fair trial.

11. Claims 17-31, 36-53: Ineffective assistance of trial counsel for failing

>    to object to numerous aspects of various witnesses' testimony, and that Petitioner was improperly shackled during trial.
>
> 12. Claims 54-56, 59-155: Petitioner's postconviction trial counsel was ineffective for failing to properly amend Petitioner's pro se petition, failing to adequately prepare for and conduct the evidentiary hearing, and failing to make various arguments and raise various claims on postconviction appeal.
>
> 13. Claim 58: The State failed to prove the *corpus delicti* of Count I because there was no evidence independent of petitioner's confession tending to prove the charged act.

(Doc. 1, 38). After the State filed a Response, (Doc. 38), Farley requested additional time to reply and to supplement his original petition. (Doc. 40, 44). After granting Farley's motion for extension of time on three occasions (Doc. 43, 47, 48), allowing over 5 months to prepare his reply, the Court refused to grant an extension for the fourth time. (Doc. 53). Farley ultimately failed to properly file a timely reply or supplement to his petition. For the reasons set forth below, Farley's habeas relief is denied.

## FACTUAL & PROCEDURAL BACKGROUND

### *State Trial Proceedings*[2]

In July 2005, Farley was charged with three counts of predatory criminal sexual assault of a child, specifically his stepdaughter, R.Y. Farley filed a motion *in limine* to exclude the out-of-court statements R.Y. made to the Department of

---

[2] This summary of the facts is derived from the detailed description by the Illinois Appellate Court, Fifth District, in its Rule 23 Orders affirming Farley's conviction on direct appeal and the dismissal of his postconviction petition. People v. Farley, No. 5-09-0229 (January 9, 2012); People v. Farley, No. 5-17-0387 (October 10, 2020); (Docs. 39-1 and 39-2). Only such testimony necessary for the analysis of the present issues is set forth in this Order. The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which Farley has not done. 28 U.S.C. § 2254(e).

Children and Family Services Investigator McElroy, which was denied and the statements were admitted as substantive evidence pursuant to 725 ILCS 5/115-10.

Investigator McElroy received a report of possible sexual assault on the hotline and after informing law enforcement, he went to speak with R.Y. and her mother, Dawn Farley. R.Y. told McElroy that on one occasion Farley had R.Y. take her pants off, and Farley blew on her vagina and licked it. R.Y. also told McElroy that Farley "made her kiss his pee-pee" which is the word R.Y. used for penis. McElroy did not believe R.Y. was lying based on his education, training, and experience. McElroy spoke to Farley the same day, and McElroy did not recall Farley denying any of the statements referring to R.Y.

Dawn learned about the possible sexual abuse after her niece told her that R.Y. has something to tell her. After learning of the abuse, Dawn's sister told her to call DCFS. Dawn testified that her relationship with Farley changed after they married and he became aggressive toward her children, punishing them by making them stand on their head and hitting them with a switch. She said that Farley raped her while she slept, and that she and her children were afraid of him. She also explained that in the summer of 2004, R.Y. had chapped lips, and when asked about why they were chapped, R.Y. explained that it was because she was sucking Farley's toes. Dawn moved out of the Farley's house near the end of June 2005 because she was tired of fighting with him.

R.Y. described one specific instance of assault in her testimony. On June, 25, 2005, R.Y. was in the garage while Farley was working on a vehicle. R.Y. wanted to go outside but before she was able, Farley grabbed her hand. He then pulled her

pants and under wear down, sat her on a vehicle, spread her legs apart, and blew on and licked the inside of her vagina. This incident was corroborated by a video-taped interview conducted by Sergeant Brenda Burton of the Illinois State Police. In the video R.Y. described the same incident and when given anatomical dolls to illustrate, R.Y. stated that defendant licked inside her vagina. In the video, R.Y. also described an incident where Farley took her onto the couch in the middle of the night and started humping her, but no penetration occurred. R.Y. explained that on another occasion she was in a field next to her house with Farley. Farley pulled down his pants and was not wearing underwear and told her "I want you to suck on this, pointing to his penis." He forced his penis into her mouth and made her suck on it until he ejaculated. On another occasion, R.Y. said Farley made her watch a sex movie, kissed her, and sucked on her chest. R.Y. described one last instance in the video, stating that while she was in the bathroom, Farley pulled her pants down and licked her buttocks and in between her legs. The video was admitted and allowed to be viewed during the trial. R.Y. in her testimony also described instances where Farley made her touch his private parts and suck his feet. He also made her stand on her head, beat her with a switch, and cursed at her. R.Y. said she felt safe after she moved out. In her cross examination, R.Y. said that she only previously accused her uncle of sexual assault.

Sergeant Burton and Special agent Rick White interviewed Farley on July 6, 2005. In their interview, Farley described an incident in a field around R.Y.'s birthday where R.Y. put his penis in her mouth and sucked on it until he ejaculated. He described another incident around spring of 2004 where R.Y. French kissed him, put

her hand on his penis and then put the penis in her mouth, and that he was curious about how much R.Y. knew about sex. He also described another incident in the garage where R.Y. urinated in a bucket, and he then picked her up and blew on her Vagina.

Farley said that the agents threatened him with 30 years imprisonment if he did not give some kind of testimony. He testified, "I had to make up a story from it, what the details that she had given me, and, you know, to make a confession so that they would work with me." He was asked to sign a statement from Sergeant Burton but refused. The trial court found the defendant guilty beyond a reasonable doubt of all three counts and was sentenced to 60 years imprisonment.

### *Direct Appeal*

Farley raised the following points on appeal:

1. Farley was denied a fair trial where a witness testified to a history of rape and abuse by him when those acts were not the subject
of any charge.

2. Farley was denied a fair trial where several witnesses improperly testified to the truthful character of the complainant or the indications of truthfulness in her hearsay testimony.

3. Farley was denied the effective assistance of counsel by the failure to object to the improper evidence above.

(Doc. 39-4, Exh. D). His conviction was affirmed, and Farley filed a Petition for Leave to Appeal (PLA), raising each of the above issues again. (Doc. 39-7, Exh. G). The Supreme Court of Illinois denied the PLA. (Doc. 39-8, Exh. H).

### *Postconviction Petitions*

Next, Farley filed a *pro se* petition for postconviction relief, asserting the first

six claims below. The trial court twice[3] appointed counsel and counsel filed a supplement to Farley's petition incorporating Farley's original *pro se* petition and further alleged claims 7 and 8 below. The amended petition raised the following summarized points:

1. Ineffective assistance of trial counsel for failing to perform an investigation of known witnesses who could have impeached the State's main witness concerning prior false accusations of sexual abuse.

2. Ineffective assistance of trial counsel for failure to know the law as it pertained to uncorroborated confessions and, since the victim did not testify to the allegations contained in count I, the statements made by the victim to police or social services were "testimonial" in nature and, therefore, inadmissible.

3. Ineffective assistance of trial counsel for failing to object to several witnesses who improperly testified to the truthful character of the victim.

4. Ineffective assistance of trial counsel for failure to file a pretrial motion to suppress defendant's statements to law enforcement or to object to the use of the statements during trial.

5. Ineffective assistance of appellate counsel for failure to raise claims 2 and 4, above, in defendant's direct appeal. (Defendant noted that claims 1 and 3 were supported by facts outside the record and therefore did not fall under a claim of ineffective assistance of appellate counsel.)

6. That the cumulative effect of claims 1-4 rendered defendant's trial fundamentally unfair and denied him due process.

7. Ineffective assistance of trial counsel for failing to object to several witnesses' testimonies.

8. That defendant was denied due process by remaining leg shackled during the bench trial.

---

[3] The first assigned counsel withdrew citing irreconcilable differences.

(Doc. 39-2, 39-9, 39-10; Exh B, I, J). The trial court held an evidentiary hearing with four witnesses and found that Farley had not met the burden of proof "that a substantial showing of constitutional violation exists." (Doc 39-11, Exh. K). Farley then filed a *pro se* motion for reconsideration of the denial, arguing his counsel failed to raise several relevant issues. The motion was denied. (Doc. 39-2, Exh. B). Farley appealed the decision and raised the following points:

1. The trial court's denial of his petition was manifestly erroneous.

2. The State failed to prove the *corpus delicti* of predatory criminal sexual assault charged in count I.

3. The trial court erred in failing to conduct an inquiry into defendant's *pro se* claim of unreasonable assistance of postconviction counsel.

(Doc. 39-13, Exh. M). The appellate court affirmed the denial of the petition (Doc. 39-2, Exh. B), and Farley filed a Motion for a Supervisory Order (MSO) in the Illinois Supreme Court, asking the court to allow Farley to file a *pro se* supplemental brief with several additional claims in the appellate court. (Doc 39-16, Exh. P). The Supreme Court of Illinois denied the MSO. (Doc 39-17 Exh. Q). Farley also filed a *pro se* petition for rehearing with additional listed claims, which was denied. (Doc. 1-4 at 104, 113-15). Farley then filed a *pro se* PLA in the Illinois Supreme Court of Illinois, asserting points 2 and 3 above, and additionally arguing that postconviction counsel was ineffective by failing to investigate witnesses previously accused by R.Y. of sexual acts and by failing to shape all of Farley's claims into a proper legal form. (Doc. 39-18, Exh. R). The Supreme Court of Illinois denied the PLA. (Doc 39-19, Exh. S).

In April 2018, Farley filed a petition for relief from judgment in Illinois State

Court. Farley alleged that his convictions and sentence violate Illinois' one-act, one-crime rule because both counts were based on the same physical act. (Doc. 1-5 at 90). The court has not yet ruled on this petition. (Doc. 1 at 4). This habeas corpus Petition followed.

## LEGAL STANDARD

This Petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is *not* merely another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases where the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state

prisoner's case." *Coleman*, 690 F.3d at 814 (quoting *Williams*, 529 U.S. at 407).

Federal habeas review serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). The Supreme Court has repeatedly emphasized that the Section 2254(d) standard "is intentionally 'difficult to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), and *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).

In addition to the requirement for timely filing under the AEDPA, a habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Bolton v. Akpore*, 730 F.3d 685, 694-696 (7th Cir. 2013). Before seeking habeas relief, a petitioner is required to bring his claim(s) through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. § 2254(c). Under the Illinois two-tiered appeals process, petitioners such as Farley must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one. *Id.*

If Petitioner has pursued his state-court remedies to exhaustion, the claims may nevertheless be barred by procedural default. *See Perruquet v. Briley,* 390 F.3d

505, 514 (7th Cir. 2004). "[W]hen the habeas petitioner has failed to fairly present to the state courts the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim." *Id.* A fairly presented claim "must place before the state court both the controlling law and the operative facts in a manner such that the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to re-solve the issue on that basis." *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) (internal quotation marks omitted). A petitioner may be excused from procedural default only "if the petitioner can show both cause for and prejudice from the default or can demonstrate that the district court's failure to consider the claim would result in a fundamental miscarriage of justice." *Bolton*, 730 F.3d at 696.

## ANALYSIS

I. **Claims 1-7 Are Procedurally Defaulted Because Farley Failed to Fairly Present the Claims Through One Complete Round of the State's Established Appellate Review Process Through Direct Appeal or Through Postconviction Petitions**

The Court is unable to consider Claims 1-7 on their merits because they are procedurally defaulted. Farley did not make any of these Claims in his appellate brief or PLA on direct appeal. He also failed to present these issues fairly at any stage of postconviction proceedings.[4] The Court considers Claim 2 as challenging the constitutional sufficiency of evidence presented, as Farley raises the issue of ineffective assistance of counsel and the *corpus delicti* Claims separately in this

---

[4] While Farley did raise some arguments and issues in his MSO, these do not excuse his default. *See Lockheart v. Hulick*, 443 F.3d 927, 929 ("a petition must contain each contention, and not just point to some other document where it might be located" (emphasis in original)).

Petition. Farley has not provided any argument regarding the cause for and prejudice from the default of these Claims in the Petition and can in no way show that there was an error so pervasive that it violated due process. *See Smith v. McKee*, 598 F.3d 374, 383 (7th Cir. 2010) ("Prejudice means, 'an error which so infected the entire trial that the resulting conviction violates due process.'") (internal quotation marks omitted). Farley provided no evidence that no reasonable jury would convict him and thus failed to show a fundamental miscarriage of justice. *Id* at 387-88 (explaining actual innocence standard for a fundamental miscarriage of justice).

## II.   Claims 8-10, and 13 Are Procedurally Defaulted Because They Fail To Present a Federal Constitutional Issue

The Court is unable to consider Claims 8-10 and 13 on their Merits because they are procedurally defaulted. While Farley did present the issues about R.Y.'s and Dawn's testimony in his appellate brief and in his PLA to the Illinois Supreme Court, he did not indicate any constitutional issue. Farley did present an argument that he was denied a right to a fair trial, but he did so by relying on precedent of state evidence law. Farley did not fairly present any facts or argument that indicated the *federal constitutional nature* of his Claim. *See McDowell v.* Lemke, 737 F.3d 476, 482 (7th Cir. 2013). Farley's ineffective assistance of counsel Claims are also barred. While Farley did argue on appeal that his counsel was ineffective for failing to properly object, he did not fairly present this Claim in his PLA. Farley did not direct the Illinois Supreme Court to any constitutional provision or cite any legal principle governing ineffective assistance of counsel. *Id.*  Farley again failed to provide both the operative facts and the controlling legal principles, thus procedurally defaulting

his Claim. *See Hicks*, 871 F.3d at 530. This procedural default is not excused as Farley had no right to counsel in pursuing the PLA. *See Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000) (Finding petition to Illinois Supreme Court discretionary and cannot establish cause for procedural default). Like the above Claims, Farley did not show any other cause for or prejudice from his default and is unable to meet the standard for a fundamental miscarriage of justice.

### III. Claims 11-12, 14-53, and 57-58 Are Procedurally Defaulted After Raising Them in His Postconviction Petition Because Farley Failed to Raise Them in His Postconviction Petition Appeal or Postconviction PLA.

The Court is unable to consider Claims 11-12, 14-53, and 57-58 on their merits because they are procedurally defaulted. These Claims allege: various ineffective assistance of counsel Claims, that, in combination, denied Farley a fair trial, that he was improperly shackled during trial, and that the State failed to prove the *Corpus Delicti* of Count 1. Farley did not raise these Claims on direct appeal. While he raised these Claims in his postconviction petition, he either failed to fairly present these Claims in his postconviction appeal or in his subsequent PLA. Like above, Farley did not show any other cause for or prejudice from his default and is unable to meet the standard for a fundamental miscarriage of justice.

### IV. Claims 54-56 and 59-155 are noncognizable.

The State failed to allege procedural default for Claims 54-56 and 59-155, thus waiving any issues of default. However, these Claims are noncognizable under the plain language of section 2254. Claims 54-55 and 59-155 all allege ineffective assistance of postconviction counsel, yet "[t]he ineffectiveness or incompetence of

counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Claim 56 alleges a violation of Illinois one-act, one-crime rule. This is a state law, and this Court can consider habeas claims "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## CONCLUSION

For the reasons set forth above, Petitioner Michael P. Farley's Petition for Habeas Relief Pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** in its entirety. This action is **DISMISSED** with prejudice. All pending motions are **DENIED as MOOT**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Here, no reasonable jurist would find it debatable whether this Court's rulings were correct. Accordingly, the Court denies a certificate of appealability.

Petitioner may reapply for a certificate of appealability to the United States Court of Appeals for the Seventh Circuit. *See* Fed. R. App. P. 22(b); 28 U.S.C. § 2253(c)(1).

**IT IS SO ORDERED.**

**DATED:  December 2, 2022**

<u>s/ *Stephen P. McGlynn*</u>
**STEPHEN P. McGLYNN**
**U.S. District Judge**